**James BRYANT et al., Appellants,**

v.

**CITY OF DANVILLE, Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 10, 1966.

James F. Clay and James F. Clay, Jr., Danville, for appellants.

James G. Begley, Danville, for appellee.

CULLEN, Commissioner.

Appellants, James Bryant and some of his neighbors, own properties on the shores of Lake Herrington, in Garrard County. They brought this action against the City of Danville alleging that the city, which for years had supplied water from its municipally owned system to the appellants' properties, was threatening to discontinue the service. The complaint sought a declaration of rights and an injunction against discontinuance of the service. Judgment was entered dismissing the complaint for failure to state a claim upon which relief could be granted. Bryant and his co-plaintiffs have appealed.

The appellants base their claim solely on a contract embraced in a deed of 1924 from appellants' predecessor in title to the City of Danville. By this deed the grantor, Mrs. Bettie W. Ely, conveyed to the city .64 acre on the Dix River (where it enters Herrington Lake) as a site for a pumping station, and gave the city an easement over another tract of 3.56 acres to run a water line from the pumping station to the edge of the lake (from which point the line would run under the lake to the opposite shore and thence on to the city). The deed contained these provisions:

"The second party also agrees and does hereby grant unto said Bettie W. Ely for the use of her remaining lands five barrels of water per day, to be taken from its system of water pipes which it may lay under this grant, *whenever said water is available in its main line pipes*, it being understood that the second party will put in a corporation cock, reducing valve and connecting lead pipe but that first party shall furnish and maintain the meter. (Our emphasis.)

"This water right may be assigned by said Bettie W. Ely to the owner of the residue of her lands and shall be treated as an appurtenance thereto.

"Said meter reading to be calculated monthly and any excess water used over said daily allowance of 250 gallons or 5 barrels to be paid for at the standard rates charged the same class of consumers in said city."

Appellant Bryant is the owner of the main portion of the original Ely lands, including the piece over which the easement was granted. The other appellants purchased parcels of the Ely lands.

The city constructed a pumping station on the .64 acre tract in 1924 and a large water main from the station across the easement, under the lake, and on to Danville. The main Ely property and the parcels sold off from it were supplied water from the main. This was "raw" water directly from the river. In 1936, after silting problems had developed at the pumping station the city constructed a new pumping station at another place on the lake. Thereafter the original station was no longer used, although for a period of years it was maintained on a standby basis. Finally, in 1954, the original station was completely abandoned and the city reconveyed to Bryant's immediate predecessor in title the .64 acre tract and the easement rights obtained in the 1924 deed.

From 1936 until the time this lawsuit was brought the water supplied to the appellants' properties came from the city's filtering plant, some miles away toward Danville. The pipe running from the original pumping station across the easement and under the lake was no longer a source of supply to the city but was simply a delivery facility for servicing customers. The appellants paid for the water the same as other customers. The pipe from the pumping station to the other side of the lake served no one other than the appellants.

The instant controversy was initiated when the city discovered that the pipe beneath the lake had developed a substantial leak, causing the loss of thousands of gallons of water per day, and the city announced plans to close the pipe off at a point across the lake from the appellants' properties, thus terminating their service.

We think it is perfectly obvious that the parties to the 1924 deed never dreamed of the water's running over the easement in any direction other than *from* the original pumping station. They were contracting for water service from the then immediate source of supply. They had in mind that so long as the Ely lands were to be burdened with a facility for a public water service the occupants of the lands should receive water also. But when the original pumping station was discontinued the pipe across the easement ceased to be a facility for public water service; it ceased to be a "main" and was relegated to the status of a *lateral* serving only the Ely properties. The city no longer derived any benefit from the continued use of the easement other than what benefit might be considered to arise from the opportunity to sell water to the Ely properties, and that cannot be considered to outweigh the benefit to the occupants of the Ely properties from having water available to buy.

The contract did not require the city to see that water always was available in the pipe across the Ely lands. It required the city only to supply water to those lands when it was available. This plainly meant available from the pumping station on its way to the main city system; not pumped back from the main city system towards the station.

It is plain to us, and we think the parties all understood, that after the discontinuance of the pumping station, or at least after the complete abandonment of the station and the reconveyance of the easement, the contract was dead and the status of the appellants became simply that of normal, noncontractual consumers. They

received water because the city chose to supply it to them—not because they had any remaining rights under the 1924 contract.

The appellants seek to make some point of the fact that the city as late as January of this year undertook to exercise dominion over the pipe that runs over the Ely lands, by digging around it. The city at that time was looking for the leak that was causing the substantial loss of water. The pipe in question served several of its consumers (the appellants). The city's efforts to find a leak in that pipe in no way change the fact that the city does not have in the pipe the "available" water that was contemplated by the 1924 contract.

It is our conclusion that the appellants do not have any right arising out of the 1924 contract to continued water service from the city, and that the circuit court correctly dismissed the complaint.

The judgment is affirmed.